All right, our final case this morning is Integrity Advance v. CFPB 21-9521. And for the petitioner, Mr. Zak. Thank you, your honor. May it please the court. My name is Richard Zak, and I represent the appellants, Integrity Advance and James Carnes. And I would respectfully request to reserve three minutes for rebuttal. We respectfully request that this court vacate the decision of the CFPB director. This was an administrative proceeding that was litigated before an administrative law judge in the first instance, and then decided ultimately by the director and the administrative law judge, the ALJ, decided the matter and entered into order imposing a $50 million judgment essentially on summary disposition in violation of the CFPB's own rules and due process without the required hearing to decide the disputed issues of fact. The case started, there was an initial trial. The administrative law judge that presided over the initial trial was determined to have been unconstitutionally appointed. And that judge's decision, a recommended decision, was vacated and a new trial was ordered in front of a new ALJ. And so the director ordered a new hearing consistent with the Supreme Court's decision, which was recent at the time in Lucia. And what the ALJ did was violate the director's order as well as the holding in Lucia to hold a new hearing. The ALJ, in fact, granted improperly summary disposition in the case. Do the rules, don't the Bureau's rules permit a summary disposition, you know, in the fashion here? I mean, just standing alone is, at least in some circumstances, I know you're arguing not here, but isn't a summary disposition that appropriate vehicle that the Bureau can use? Certainly, Judge. The rules provide for summary disposition, just not in this circumstance. Summary disposition is appropriate in front of the fact. And the Bureau is entitled to judgment in its favor. In this case, there were disputed issues of fact that required a hearing. And the ALJ acknowledged that was the appropriate standard, that the record had to be undisputed before the Bureau was entitled to judgment. But the parties, I thought the parties did ask for summary disposition. We moved for summary disposition, as did the Bureau. But in those cross motions for summary disposition, the judge was required to review the evidence in the light most favorable to the non-moving party. And that's what the judge did not do in this case. The judge did not give Mr. Carnes specifically the benefit of the doubt as required by the Bureau's rules and the case law related to summary disposition. And on that, you're focused on the issue of whether he had knowledge. Whether, exactly, whether Mr. Carnes had knowledge of the alleged misrepresentation in the loan agreement. And the record is clear that that was a matter in dispute and that the evidence was clear that there's significant evidence that Mr. Carnes did not know that. And the judge, rather than- What is the evidence he did not know? Just the advice of counsel? No, there's a significant amount of evidence. And it's not advice of counsel. What Mr. Carnes did was he hired a experienced outside lawyer to develop the agreement and to draft it. He did not draft it. He did not review it. The testimony was that he had paged through it, but he relied on outside counsel to draft it. He also- Well, let me stop you there because his testimony, I mean, as I read the record, I mean, he says that he understood that the agreement was written as if it was a single payment loan as opposed to one that rolls over. And so, I mean, while it is true the testimony is he hired counsel, I don't think it's fair to say that he didn't have any knowledge of what was in the agreement. And so, when I look at the argument here about him relying on counsel and that affecting, I guess, his good faith or his intent, one of the things that the Bureau relied upon is that anytime anyone tried to go into what advice he was given by counsel, he asserted attorney-client privilege. And so, the ruling was a ruling of law that by asserting the privilege, there was a waiver. And, Your Honor, first of all, that's not correct. We sought to introduce that evidence when the case was remanded, and our effort to do so was denied. But it's not just the fact that Mr. Carnes hired outside counsel. We're not relying on an advice of counsel defense. The fact that he worked, I think the testimony is that he did. What he did not know about, and what the record is disputed about, is did he know that there was a misrepresentation or an alleged misrepresentation in the agreement? The fact that he had hired a lawyer to draft it is one piece of that evidence that establishes that dispute. But he also had a general counsel internally that dealt with that issue and interacted with outside counsel. But there's a whole bunch of other evidence as well that establishes that he had no reason to suspect that there was any issue with that agreement. And it goes to not just the lawyers, but his company was regulated, Integrity Advance, was regulated extensively by the Delaware Department of Banking. In the hearing before the, in the original hearing, did you put on testimony of the lawyers and the general counsel on that issue? Your Honor, we did not represent Mr. Carnes at the original trial. Prior counsel did attorney-client privilege, but that's beside the point. I think the point is, is that Mr. Carnes relied on not just the lawyers, but the fact that his business was regulated by the Department of Banking. And those agreements were reviewed every year by the Department of Banking for such things as compliance with Delaware law, which provided that those agreements not be deceptive. The regulators reviewed those, they made changes to those agreements from time to time, and then they returned them to Integrity Advance for use with their approval. But what's the answer? You did have the opportunity the first time around to present this evidence, right? You mean the attorney-client, the attorney? Everything you're speaking about, yes. We did not have an opportunity. The law had changed in between the first trial and when the case was remanded, but Judge Phillips, what we were, what the Bureau was ordered to do by the Director was conduct a new hearing. And that's what Lucia requires. And what we're, what our issue is, is that with respect to this issue, this was a matter in dispute. And so it was not right for summary disposition because there were matters in dispute about Mr. Carnes' knowledge and his knowledge of the alleged misrepresentation. And we were denied the opportunity to prove that at the second hearing, and we were entitled to do that. Well, those matters in dispute had been in dispute since the outset, had they not? They had, Your Honor, but we were entitled at hearing number two because the original judge was not appointed properly to try those issues in the second hearing. Now, what the judge found was she found that she was required to view the evidence in the light most and only grant summary disposition if there was no dispute. And there was a dispute and the rules provide that in that circumstance, when there is a dispute, there must be a hearing. There cannot be summary disposition. It's the same standard as summary judgment rule 56 in a civil case. And so in addition... Didn't she credit that he did rely on the advice of counsel in preparing the loan documents? Didn't the ALJ credit that? She did not, Judge. She discounted it. She did not. What she did with each piece of evidence, and we lay those out in our brief, in addition to the Department of Banking regulation, as well as the structure of the agreement, the business used a call center that explained the agreement to borrowers, that the agreement required signatures at many points during the agreement, requiring the borrower to read the entire agreement and to understand what was in that agreement before signing it. All of those things show that there was a dispute about his knowledge. And rather than giving us the chance to prove that at a hearing, she found that she made a factual finding that Mr. Carnes was aware of the alleged misrepresentation. And that was not appropriate. There are two different issues. I mean, one is what I understand her to have found is she looked at certain evidence and she said he had enough information, he admitted to enough information to know there was a misrepresentation. And I don't think the law requires him to also know it was illegal to make that misrepresentation. So she split them out. And the fact of the matter is, is that his knowledge wasn't disputed. If you look at the record as a whole, there would be no reason for him to suspect that there was a misrepresentation in the agreement. And as a result of that, well, he testified that he knew the loan agreements default to a multi-payment structure operated, including its auto renewal and auto payment provisions. He knew that most borrowers would pay more than the total payment, total payments disclosed. He knew that 90% of the loans experienced at least one rollover. And he knew that IA used RCCs to collect money from borrowers who had withdrawn ACH authorization. I mean, those are the facts she relied on and those aren't in dispute. They are. She is not viewing those facts in the light most favorable to Mr. Karnes. And if you, and we've, and I'd like to reserve some time for rebuttal, but our brief details, each one of those, the facts that the considered in the light most favorable to Mr. Karnes, which she did not. And if I could reserve my remaining time for, I'll give you some, I'll give you some rebuttal time before we turn it over to the Bureau on the, on the, you know, the, the judge rat ratified filing of the notice of charges. And I think you, you don't read Collins to permit that I gather, but what, you know, kind of give me your kind of your concise argument on why that, you know, kind of ratification doesn't work here. Certainly the SELA law case specifically holds that the ratification is required and it was remanded for that purpose. And the Bureau has conceded that that is the case, that ratification is required and it must be done properly. It raised this new issue for the first time in its brief. And it has conceded not only in this case, but in all other litigation post SELA law that ratification was required. Now, let me, you say that you just stated what this holding of SELA is a, you understand it, but Collins says they shareholders read far too much into SELA and SELA did not resolve any issue concerning ratification, including whether ratification was necessary. I mean, don't we have, I mean, that's a Supreme court interpretation of its own case. Right. With respect to a different agency under entirely different circumstances. Well, it's still interpreting the holding of SELA that you're trying to rely on a contrary holding. Well, it's saying in that particular case, in the Collins case, that ratification may not be required in that circumstance, but in SELA, what the court said was it was required, ratification was required. And the Bureau has conceded that and has not raised that issue until after the case went on appeal and it's waived. But aside from that, Collins does not require, if you read that paragraph, it does not require, it does not hold that ratification is never appropriate. In fact, if you look at the FEC case, the FEC case talks about how when an agency headed by an unconstitutionally appointed director makes a decision that in order for that decision to be valid, the director, once properly appointed and properly in position has to ratify decisions made and actions taken while the agency was headed by an unconstitutionally appointed director. That is settled law in the Supreme Court and Collins doesn't change that. And then also quickly on your discovery argument, are there any specific documents that you would have expected the Bureau to have that would not be in the files of the enforcement group or was your discovery just more of a general cover all the bases? No, we pointed to specific documents that the Bureau has. In their enforcement manual, they detail documents that they do have in their files, including files related to their initial opening of the case. They create a document called an administrative memorandum that discusses the matter. And then when they, that's when they first open the inquiry, when they open investigation, they would also draft a lengthy memo that would be sent up the chain and reviewed, I think by the, one of the assistants to the deputy director. And so we asked for documents, those two documents in particular, as well as other internal documents. We understood that the Bureau is, does have some privileges and may be required or may be permitted to either redact those documents or provide them to the ALJ in camera. But those documents would say specifically when the Bureau discovered the have contact with the Delaware Department of Banking, IA's regulator, which would have identified who Mr. Carnes was, what his role was, how long he'd been in that position and all those details that they had in their files regarding the businesses operations that the department discovered during its regulation of the business. So there's no doubt that the Bureau had information in its files related to the discovery of the alleged violations. And what they've attempted to do here is get the benefit of that discovery rule without giving us or any party, any ability to determine when the Bureau actually discovered the violations. Our request was very narrowly tailored. It would not have required the Bureau to search all of its files. There were certain very specific documents that we identified that the Bureau could have found very easily to determine whether, when the alleged violations were discovered. All right. Thank you, counsel. I will give you some rebuttal time also. Let's hear from the Bureau, Mr. DeMille Wagman. Thank you, your honor. Lawrence DeMille Wagman for the Financial Protection Bureau. I'd like to take the arguments raised by Mr. Zack in reverse order. First, with respect to the subpoena, they sought a subpoena. They sought to subpoena documents that they contended would bolster their statute of limitations argument. There was no dispute of no abuse of discretion when the administrative law judge denied that request. They requested two categories of documents. One of the categories of documents they already had. The other category of documents were documents that even they recognized were privileged and, in any event, were irrelevant to their statute of limitations argument. The first category of documents was external documents that the Bureau had received prior to November of 2012, three years before the Bureau initiated this proceeding by filing its notice of charges. External documents that the Bureau had received that mentioned Mr. Carnes or Integrity Advance. Bureau Rule 206, Bureau's Rule of Procedure, required the Bureau's Enforcement Counsel to provide a counsel for Integrity Advance and Mr. Carnes with all external documents that the Bureau had received, that the Bureau's Office of Enforcement had received. All documents that had been received by the Bureau's Office of Enforcement that mentioned Mr. Carnes or Integrity Advance. There's no dispute that the Bureau provided those documents. Petitioners simply speculate that there may be buried somewhere in the bowels of the Bureau some other document that mentions Mr. Carnes or Integrity Advance. But even if there were, even if there were such a document, and it's hard to imagine why such a document would not have come to the attention of the Office of Enforcement once the Office of Enforcement initiated this case, but even if there had been such a document, it would never have, there's no likelihood at all that such a document would have revealed. Why didn't you just say, why didn't you just say that rather than fight the subpoena? You're representing to us that you provided all relevant documents and why didn't you just say that in response to the subpoena? That's what the Administrative Law Judge said. She said they had already received the documents in response to Bureau Rule 206. That was her, that was, that was her decision. And in any event, even if there had been other documents, those documents never would have mentioned Mr. Carnes' role at Integrity Advance or described his knowledge with respect to Integrity Advance's misrepresentations, which were key elements to the Bureau's case. The Administrative Law Judge also held that with respect to the other category of documents, internal Bureau documents, those were going to be privileged and in any event, they would not provide evidence regarding when the Bureau had discovered petitioners' violations because the Bureau learns about violations from external documents, from external sources. The Bureau learned of Mr. Carnes' knowledge, Mr. Carnes' role when it took his deposition in June of 2020. No consumer complaint, which was pretty much all the Bureau had received prior to November of 2012, no consumer complaint would have mentioned Mr. Carnes or would have described his knowledge of Integrity Advance's misrepresentations. Now with respect to ratification, petitioners mention Federal Election Commission cases. Those cases involve pretty much violations of the Appointments Clause. They involve officials who did not have the authority to take actions that they took. Ratification may be necessary to breathe life back into an action that was initially void. Here, the Supreme Court in unconstitutional forecast removal provision is not void so long as that official is properly appointed. It was never disputed that the Bureau's director, when it issued the notice of charges, was properly appointed. He was nominated by the President. His nomination was confirmed by the Senate. Here, we are before this Court on a petition for review of the Bureau's final decision. That was the decision of the director that was issued in January of 2021, more than half a year after the SALA law decision. There is no question that at that time, the Bureau's director was fully accountable to the President. If the President had in some way been displeased with the course of this proceeding, he could have so instructed the director and told her to terminate the proceeding and removed her if she had refused to do so. That never happened. There is no indication that the President was in any way displeased with the course of this proceeding. Now, with respect to petitioner's argument... Before you move on, it seems in these circumstances wholly unrealistic to expect the President to track a particular enforcement action. I don't think respondents could ever overcome that type of standard if that's what the standard is. Certainly, in this case, the petitioners make the claim that the previous director, Mr. Cordray, was the President had sought to remove him if he could. Doesn't that cast some doubt on any action the Bureau took under his leadership before the Celia case? At the very least, wouldn't that require the Bureau to file a new notice of charges with the charges? The Bureau was headed by Director Richard Cordray. At that time, President Obama was still President of the United States. President Obama had nominated Mr. Cordray, and he had been confirmed by the Senate. Actually, petitioners here got everything they were entitled to because issues with respect to the complaint are essentially subsumed into the it's true. President Trump probably did not track this proceeding, but petitioners got the next best thing in that a Director of the Bureau who had been nominated by President Trump, confirmed by the Senate, she issued the decision, and it was fine with her, and that's the best they are entitled to ask for. If President Trump had specifically been concerned with this proceeding, if he had focused on it, then why would he? He was happy with this. There's a lot of other enforcement actions. There's no reason to believe he would have had any concern about this. He could have directed, he could have instructed the Bureau's Director to change course, and she would have had to do it, at least under threat of removal. Well, even under, even with Director Cordray, under Collins, where you would then have an unconstitutionally structured agency, the agency's action would be valid, wouldn't it? So long as the agency had authority to act. I absolutely correct, Your Honor. That's what the court said in Collins versus Yellen. Actions taken by an official who, even if the official is subject to an unconstitutional forecast removal provision, are not void unless, as long as that official was properly appointed, and Director Cordray was properly appointed. There's nothing void about the notice of need for ratification. When the Bureau's Director indicated she was ratifying this action, she said, there's no real need for me to ratify it, but she was doing it because her decision preceded Collins. She didn't know for sure what the court would say. But also, she was indicating that she, an official who was subject to, who was subject to, was fully accountable to the Now, petitioners argue that they were entitled to a new hearing in this matter. The only issue they wanted to present additional evidence with respect to was Mr. Carnes' reliance on advice of counsel. But in the Director's decision in this matter, she assumed that fact. She assumed that Mr. Carnes relied on advice of counsel, and she held that as a matter of law, no matter how many lawyers he had obtained to give him advice, that was simply irrelevant, because he knew of the misrepresentation. And that's her decision. She based it on versus Amy Travel, a 1989 decision of the Seventh Circuit that says that an advice of counsel, advice of counsel is no defense where an individual, where liability is being posed on an unfair or deceptive acts or practices. This court has said basically the same thing in FTC versus FREECOM, and that's at 401, Fed 3rd, page 1192, at footnote 7 in that case. This court notes that actions by a federal agency enforcing a consumer protection law that prohibits unfair or deceptive acts or practices, in that case, it was the Federal Trade Commission Act, but the Bureau's Consumer Financial Protection Act is virtually identical to the Federal Trade Commission Act. This court held that these actions are not actions for fraud. It is irrelevant. The individual's intent are irrelevant. The individual's knowledge of the law are irrelevant. As Judge McHugh noted, and as we lay out at pages 23 and 24 of our brief, there's ample evidence that Mr. Carnes was well aware of how integrity advances loan documents work. There was a huge discrepancy between the amount they disclosed as the total of payments and the amount that borrowers were likely to have to pay under the default, were likely to have to pay under the default terms of the loan. He was well aware. Let me interrupt you because it's hard to get a word in. I think the argument is that all those facts that I cited, that they can be interpreted different ways, and that they should be interpreted in favor of Mr. Carnes here, and that that's not what happened. I think that's the argument. No, Your Honor. There's no way to interpret the facts that we lay out on pages 23 and 24 of our set forth in detail in the director's decision here. He knew what the misrepresentation was. What they argue is that he never read the loan documents. He hired counsel to draft the documents. He believed there was no misrepresentations. These documents were reviewed by officials at the Office of the Delaware State Bank Commissioner, but that's irrelevant. That goes to his knowledge of whether the conduct was illegal or not. Ignorance of the law is no excuse. It's no defense with respect to violations of the Federal Trade Commission Act. This is, after all, a civil action, and the Bureau seeks to obtain restitution for consumers who were injured by petitioners' unlawful conduct. So it is simply irrelevant that he received the advice of counsel. The Bureau seeks restitution in this case. We seek legal restitution. Petitioners argued that the Bureau's award of restitution should be limited to only their net profits. An award legal restitution seeks a money judgment for amounts that a party obtained as a result of illegal conduct. That is exactly what the Bureau is seeking here. I was just going to ask, since you brought up restitution, shouldn't restitution under lieu be limited to the net profits? No, your honor. Restitution in lieu, that was the SEC which only had the authority to obtain equitable remedies. Here, under the Consumer Financial Protection Act, the Bureau has the authority to obtain not only equitable restitution, but also restitution at law, and the Bureau's director invoked that. Furthermore, in lieu, the SEC, which again, only has authority to obtain equitable remedies, sought a disgorgement of profits. That's what they asked for, and the court said, if you're asking for an equitable disgorgement of profits, it may not be a penalty. Here, as the Supreme Court explained in Great West versus Knudsen, that's a 2002 decision. The court described the distinction between equitable restitution and restitution at law. Restitution at law is akin to a contract judgment. Petitioner's contract here was the loan agreement that they made all their borrowers sign, and they collected more money from borrowers than they disclosed in the contract. What the Bureau is after is a refund of the money that they collected above and beyond the amount that they disclosed. That's the only amount of restitution that we're seeking here. Does the court have any additional questions? What about disgorgement? I mean, there was the restitution piece, and then once you satisfy the restitution, anything that's left, you have to disgorge as inappropriately obtained profits. When you're looking at profits, aren't they correct that you need to look at the cost of earning those profits? No, Your Honor, we were not going after profits here. We were going after again, an award of restitution at law, which seeks money that petitioners obtained that they should not have obtained, money that they obtained as a result of their violations of law. In lieu, the Supreme Court recognizes that restitution and disgorgement, those terms, are often used interchangeably. When the Bureau's director here referred to disgorgement, all she meant was that after petitioners had paid their restitution to the extent the Bureau was unable to actually return some of that money to borrowers, perhaps we wouldn't be able to locate all the borrowers, that money was not to go back to petitioners. They were not entitled to get their wrongfully obtained funds back. That money was to go to Treasury. That's all the director meant there. This was not an action for disgorgement of profits. It was an action for at law to obtain from petitioners the money they should not have obtained. While we're on the remedies here, let's turn for a minute to civil penalties. That is a focus on the good faith or bad faith of the actor to some extent, right? Yes, good faith. There, wouldn't it be appropriate to at least consider what advice the person had received from independent counsel as to whether they were acting, you know, they may still have been misrepresenting, but they may have been acting in good faith and reliance on what they're being told? Yes, Your Honor, and the director did so in her decision. She's required to consider five or six different factors. She considered them all. One is good faith. With respect to good faith, she considered petitioners' reliance on the advice of counsel. She noted that in April of 2014, nearly seven months before the Bureau filed its notice of charges initiating this proceeding, the Federal Trade Commission brought action against AMG services, alleging that AMGs use, AMG was also a payday lender, and that its use of loan documents that were virtually identical to the documents that Petitioner used here were unfair and deceptive, violated the Federal Trade Commission Act. And yet, Petitioner's counsel who advised them with respect to the loan document apparently gave them no advice with respect to this action brought by AMG. And they continued, unabated, with the, using the documents that the FTC had challenged. The Bureau's director, the Bureau's director imposed less than 1% of the amount of civil penalties that she could have imposed by law. She took into account all the factors she was required to consider, and it was no abuse of discretion. The amount that she awarded was no abuse of discretion. Are there any further questions? All right, counsel, your time's expired. Give Mr. Zach three minutes for rebuttal, please, Melissa. Thank you, Your Honor. Just, why don't I address the three points quickly. So, everything that Mr. DeMille-Waggman said about the statute of limitations issue were just representations that the Bureau had made to the administrative logic. There was no verification or confirmation of any of that. We were not allowed to look at any document to make that determination, to attempt to enforce a subpoena. We had to accept the Bureau's word for it. And let's be clear, we disputed everything that he said we did not dispute. We disputed in the, in front of the ALJ, and there was every reason to believe that there was additional information in the Bureau's files, easily obtainable, that they could have produced to us, much of which would have not been privileged. There are two documents that they refer to publicly that exist in every case. We agree, portions of those may be privileged. Not every of those are privileged. They had access to information from the Delaware Department of Banking, specifically identifying Mr. Carnes as the CEO of the company. And what the ALJ required us to do was take the Bureau's word for it, and not to explore the issue related to this very beneficial discovery rule that the Bureau has in its statute of limitations. We should be entitled to determine when they discovered the violation in order to exercise our rights under the statute of limitations. Judge McHugh, you're exactly right in the characterization of our argument on what the record disclosed, that if you look at the facts, in the light most favorable to Mr. Carnes, they show that he did not know about the misrepresentations, alleged misrepresentations in the loan documents. And the regulation, use of counsel, the way the business was set up, all demonstrate that he did not know about those representations. And as a result of that, we were entitled to a full hearing, and we did not get that. We got a summary disposition, but we were entitled to a hearing on that issue. And unless the court has any additional questions, we ask that you vacate the director's order and remand the matter consistent with the request we made in our brief. All right, counsel. Thank you. We appreciate the arguments this morning. You are excused and the case shall be submitted.